1

2

3   Charles Edward Lincoln, III
    c/o Peyton Yates Freiman
4   Tierra Limpia/Deo Vindice
    603 Elmwood Place, Suite #6
5   Austin, Texas 78705
    CEL Telephone:    512-968-2500
6   PYF Telephone:    512-461-8192
    E-Mail: charles.lincoln@rocketmail.com
7   lincoln_for_california@rocketmail.com
8   Plaintiff *in propia persona*

9   Renada Nadine March
    7 Bluebird Lane
10  Aliso Viejo, California 92656
    Tel: 949-742-0436
11  E-mail: renadajewel@gmail.com
12  Plaintiff *in propia persona*

13  Joseph Cohen, Carol Regina Cohen
    11 Lighthouse Pt.
14  Aliso Viejo, California 92656
    Tel: 949-300-1870
15  Email: mommieanie@aol.com
16  Plaintiff *in propia persona*

17  Daniel C. Mack
    31321 Don Juan Avenue,
18  San Juan Capistrano, California, 92657
    Tel: 949-278-2711
19  Email: mackassoci@aol.com
20  Plaintiff in *propia persona*

21  Alicia Singh
22  1394 Arrowhead Drive
    Placentia, CA92870
23  Plaintiff *in propia persona*

24  Richard Mendez
25  1394 Arrowhead Drive
    Placentia, CA92870
26  Tel: 714-269-3341
    E-Mail: mendez_richard@hotmail.com
27  Plaintiff *in propia persona*

28

-1-

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1

2

3
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION
4
### (SANTA ANA)

5   Charles Edward Lincoln, III,               §
    Renada Nadine March,                       §
6   Daniel Mack; Joseph Cohen; Carol Cohen,    §
    Richard Mendez, Alicia Singh,              §
7                                              §
    Plaintiffs,                                §
8                                              §
9   v.                                         §    No. SACV09-1072 DOC (Ex)
                                               §
10  The State of California,                   §
    Jerry Brown, Attorney General of          §
11  California, in his Official Capacity       §
    Arnold Alois Schwarzenegger, Governor of   §
12  The State of California, in his Official   §
    Capacity,                                  §
13  Steven David Silverstein,                  §
14  Ron Elter, John Rampello,                  §     *Plaintiffs Combined*
    GRE Development, Inc., individually        §     *Response To*
15  and as agents and trustees of the          §     *Documents 49, 50,*
    4 Via Corbina Trust, Christopher Archuleta, §    *51-1 & 52 Pursuant*
16  MERS (Mortgage Electronic Registration     §     *To Rule 12(g-i)*
17  Services), other unnamed Attorney          §
    Defendants John & Jane Does 1-10,          §
18  Megladon Financial, L.L.P.,                §
    Lighthouse Trust #11 Catherine H.          §
19  Meyer LLC,                                 §
    DNE associates LLP,                        §
20  Atlas Properties Real Estate,              §
21  James Radwan, Rochelle Matkin              §
    Trustee Corps, Russell Bell,               §
22  Quality Loan Service Corp.,                §
    FIRST NEWPORT PROPERTIES, LLC,             §
23  John Murk, Dianne D'Agnolo,                §
24  The Honorable Sandra Hutchens,             §
    The Sheriff of Orange County,              §
25  CAL-WESTERN Reconveyance,                  §
    Dennis Stacy, Coldwell Banker,             §
26  And JOHN & JANE DOES 11-20,                §
    Eric Holder, United States Attorney        §
27  General, in his official capacity,         §    §
28          Defendants.                        §
    _____  §
                                                     -2-

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

DIANA BEALL, *attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1
2
3

## PLAINTIFFS COMBINED RESPONSE TO DOCUMENTS
## 49, 50, 51-1 & 52 PURSUANT TO RULE 12(g-i)

4
5
6
7
8
9

Come now the Plaintiffs with this their Combined Response to Documents 49, 50, 51-1, & 52, namely Defendants' several Motions to Dismiss Pursuant to Rules 12(b)(1)-12(b)(6) (Docs. 49 & 52), the "Silverstein Defendants'" Anti-SLAPP Motion to Strike (Doc.51-1) and the "MERS" Defendants' Request for Judicial Notice.  Plaintiffs combine their response to all these motions as allowed by Rule 12(g-i), which states:

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> (g) Joining Motions.
> (1) Right to Join.
> A motion under this rule may be joined with any other motion allowed by this rule.
> (2) Limitation on Further Motions.
> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.
> (h) Waiving and Preserving Certain Defenses.
> (1) When Some Are Waived.
> A party waives any defense listed in Rule 12(b)(2)-(5) by:
> (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
> (B) failing to either:
> (i) make it by motion under this rule; or
> (ii) include it in a responsive pleading or in an amendment allowed byRule 15(a)(1) as a matter of course.
> (2) When to Raise Others.
> Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
> (A) in any pleading allowed or ordered under Rule 7(a);
> (B) by a motion under Rule 12(c); or
> (C) at trial.
> (3) Lack of Subject-Matter Jurisdiction.
> If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

-3-

DIANA BEALL, attorney for Lincoln
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1

2

3    (i) Hearing Before Trial.
     If a party so moves, any defense listed in Rule 12(b)(1)-(7) — whether
4    made in a pleading or by motion — and a motion under Rule 12(c) must
5    be heard and decided before trial unless the court orders a deferral until
     trial.
6

7       MERS' Request for Judicial Notice is by far the most significant, followed by

8    the Silverstein Defendants (Larry Rothman's) Anti-SLAPP Motion to Strike. For all

9    relevant purposes the Anti-SLAPP motion will be treated as a Rule 12(f) Motion to

10   Strike because there is no such thing as an Anti-SLAPP motion in the Federal Rules

11   of Civil Procedure and therefore no standard of review or response to such a

12   motion.

13      Plaintiffs object to the introduction of new evidence (see Doc 50) not even

14   directly raised by the Plaintiff's Pleadings, and in particular object to the lack of

15   foundation and relevance offered for some of the 11 documents submitted in

16   Defendants' Request.

17      In particular, however, Plaintiffs DEMAND the opportunity to conduct discovery

18   in order to clarify the significance of these documents, and submit that the Court has

19   no choice but to grant Plaintiffs' Motion to Convert Defendants' Motions under

20   12(b)(1)-(6) to a Motion for Summary Judgment under Rule 56, and to allow

21   Plaintiffs' a reasonable time and opportunity for discovery prior to ruling on said

22   MSJ (the Motions to Dismiss and to Strike should simply be denied outright, albeit

23   without prejudice to reframe and reassert after discovery).

24   **(d) Result of Presenting Matters Outside the Pleadings.**
25   **If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings
     are presented to and not excluded by the court, the motion must be treated**
26   **as one for summary judgment under <u>Rule 56</u>. All parties must be given a**
     **reasonable opportunity to present all the material that is pertinent to the**
27   **motion.**
28

## INTRODUCTION

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

On October 12th MERS and OneWest filed a Request for Judicial Notice, and a 12(b)(6) Motion to Dismiss. The Request for Judicial Notice was comprised of 11 attached exhibits, that were not used or cited in the original pleadings. Specifically Exhibits 2, 4, 5, 6, 7, 8.

On October 14th Defendants Silverstein, GRE Development and Ron Elter filed two motions: an Anti-Slapp Motion, and a 12(b)(6) Motion to Dismiss.

MERS and ONEWEST, for their part, repeatedly argued that the evidence against them was too conclusory and vague to be permitted in this Court. Plaintiffs seek to augment and clarify their existing argument by providing this Court with a factual history of Mortgage Electronic Registrations Systems to further their response to MERS and ONEWEST's Motion to Dismiss.

## A. Background of Mortgage Electronic Registration Systems

Given the venerable and uninterrupted legacy of land title recording acts, it is interesting that first fundamental change to the American public land title recording systems in over three hundred years was not initiated by publically elected leaders. Instead, Defendant Mortgage Electronic Recording Systems, Inc was conceived of and created by a tight-knit group of powerful mortgage industry insiders.[1] In October of 1993, a task force of mortgage finance companies releases a "white paper" at an annual convention of mortgage bankers.[2]

The paper suggested that an electronic book entry system of tracking mortgage loans would be better for the mortgage lending industry than the legal system of county recording offices.[3] The paper encouraged comments from the real

---

[1] Mullen, *supra* note X ("MERSCORP, Inc., was formed by Mortgage Bankers Association of America (MBA) member companies as a central electronic loan registry in an ambitious attempt to help lenders steamline the lending process and eliminated the need to record assignments when selling loans to other mortgage companies.").

[2] Phyllis K. Slesinger & Daniel McLaughlin, *Mortgage Electronic Registration System,* ID. L. REV. 805, 810-11(1995).

[3] *Id.*

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

estate finance industry, leading to the formation of a steering committee affiliated with the Mortgage Bankers Association of America (MBA). [4]

The MBA is a trade association supported through dues paid by mortgage lending companies that conducts public relations for the industry. This committee of mortgage bankers retained Ernst & Young, an accounting firm, to study the feasibility of developing MERS. In addition to studying the technological and financial hurdles, the accounting firm also did some telephone interviews with mortgage loan originators, servicers, warehouse lenders, custodians, assignment processors, and employees at Fannie Mae and Freddie Mac. The accountants' primary conclusion was that the finance industry could save a lot of money by deciding not to pay the fees that local governments require to record mortgage assignments. [5]

The legislative history of MERS concept is not found in Congressional or state assembly records, but in the trade magazine Mortgage Banking. In 1995 and 1996 the MBA trade association's steering committee developed a business plan that would make MERS a reality.[6] The principal consultant involved in creating MERS explained that the "original investors came in 'on faith'…because the details of how MERS would work weren't ironed out until mid-1996 at working group meetings involving different industry players."[7] MERS' Senior Vice President of Operations and Information Management explained that the legal and technological questions behind MERS were answered when "lenders and servicers of various sizes, along with the secondary market agencies, 'got in a room together, walked through the

---

[4] *Id.*
[5] Slessinger & McLaughlin, *supra* note X, at 811-12 (estimating savings of $51.7 million annually for mortgage servicers and $14.1 million annually for mortgage originators).
[6] Schneider, *supra* note X.
[7] *Id.*

-6-

**COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1**

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

process and came to an agreement." [8] Two years after releasing the initial white paper, MERS, Inc. Incorporated in Delaware as a non-stock corporation owned by mortgage banking companies that made initial capital contributions ranging from 10 K to 100 K. [9]according to a Mortgage Banking Association Executive Vice President involved in the creation of MERS the primary goal of the MERS initiative was to "lower costs for servicers."[10]

Today mortgage finance companies currently use the MERS' name to interact with the land title recording system in one of two ways: either by recording MERS' name as an assignee, or by recording by recording MERS' names as the original mortgagee.

Under this recording strategy the originating lender makes a traditional mortgage loan by listing itself as the payee on the promissory note and as the mortgagee on the security instrument. The loan is then assigned to a seller for repackaging through securitization for investors. However, instead of recording the assignment to the seller or the trust that will ultimately own the loan, the originator pays MERS a fee to record an assignment to MRS in the country records. MERS'

---

[8] *Id.*

[9] *Id.* The charter members of MERS, Inc. were: 1st Nationwide Mortgage; Allied Group Mortgage, Inc.; American Home Funding; American Land Title Association; Crestar Mortgage Corp,; Fannie Mae; Freddie Mac; GE Capital Mortgage Services, Inc.; GMAC Residential Funding Corp.; HomeSide Lending, Inc.; Knutson Mortgage Corp; Lau Capital Funding; Merrill Lynch Credit Corp; Mortgage Bankers Association of America; Mortgage Guaranty Insurance Corp.; Northwest Mortgage, Inc.; ReliaStar Mortgage Corp.; Source One Mortgage Services Corp,; Texas Commerce Bank, NA; Chase Manhattan Mortgage; and, Weyerhaeuser Mortgage Company. Id. Mortage Electronic Registration Systems, Inc. is actually a wholly owned subsidiary of MERSCORP, Inc. The dual structure of the company was designed to prevent creditors of MERSCORP from attempting to seize loans recorded in the Mortgage Electronic Registration Systems, Inc.'s name in the event that MERCECORP, Inc. declares bankruptcy. Mullen, *supra* note X, at 62

[10] *Id.*

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

counsel maintains that MERS becomes a "mortgagee of record" even though its ownership of the mortgage is purely fictional. [11]

Although MERS records an assignment in the real property records, the promissory note, which creates the legal obligation to repay the debt, is not negotiated to MERS.[12] Everyone agrees that MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or a deed of trust sale. MERS has no actual financial interest in any mortgage loan. MERS does not even provide lien real estate of the mortgages it purports to own, instead referring title attorneys, refinancing lenders, and consumers to the loan's servicer. [13]

MERS' revenue comes, not from the loan or the disposition of collateral, but from fees that the originator and other mortgage finance companies pay to MERS. Once a loan is assigned to MERS, the public land title records no longer reveal who (or what) actually owns a lien on the property in question.

After a few years in business, MERS decided it could help mortgage financiers pay even less to county governments by simply doing away with the first assignment to MERS, and instead listing MERS as the mortgagee in the original mortgage. Once again, although MERS does not actually advance any loan principal

---

[11] R.K. Arnold, Yes, There is Life on MERS, 11 PROBATE & PROPERTY 32, 34 (July/August 1997). Arnold explains:

> When a mortgage is reistered on the MERS system, it receives a mortgage identification number (MIN). The borrower executes a traditional paper mortgage naming the lender as mortgagee, and the lender executes an assignment of the mortgage to MERS. Both documents are recorded in the public land records, making MERS the mortgagee of record. From that point on, no additional mortgage assignments wil be recorded because MERS will remain the mortgagee of record throught the life of the loan.

[12] Lipton, *supra* note X, at 3.

[13] *Please Release Me!*, INSIDE MERS, Jan./Feb. 2004, 2. MERS instructs servicers to prepare and record lien releases entirely on their own. But, the servicers are instructed to do so in MERS' name, even though MERS has nothing to do with the decision to release the lien. *Id.*

-8-

**COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1**

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

to the homeowner, does no have the right to receive any payments from the borrower, and is not the actual party in interest in any foreclosure proceeding Nevertheless, the actual mortgagee pays a fee to MERS to induce MERS to record the mortgage in MERS' name. By eliminating the reference to an actual mortgagee or the actual assignee, MERS estimated it would save the originator an average of $22.00 per loan. [14]

In addition to its record keeping and recording system liaison roles, MERS has also become directly involved in consumer finance litigation. When MERS is listed in county records as the owner of a mortgage, courts have generally made the natural assumption that the appropriate plaintiff for bringing a foreclosure action is in fact MERS. In an effort to convolute the proceedings and move foreclosures along as quick as can be, MERS has allowed actual mortgagees and loan assignees or their servicers to bring foreclosure actions in MERS' name, rather than in their own name. [15]

Plaintiff alleges that MERS does this in an effort to illegally privatize the recordation process, avoiding the public recordation fees AND allowing them to keep transfers and assignments secret. Once a loan is assigned to MERS, the public land title records no longer reveal who (or what) actually owns a lien on the property in question.

---

[14] MERS Frequently Asked Questions: "Does MERS cange the current mortgage closing process?", www.mersinc.org/why_mers/faq.aspx, viewed June 9th, 2004 ("[Y]ou'll save $22 or more per loan when you specify MERS as the Original Mortgage of Record in the mortgage or deed of trust."); Mullen, supra note X ("The good news for companies embracing the system changes was that using MOM [MERS as Original Mortgagee]. As the practice has come to be known, provides an immediate cost reduction of approximately $22 per loan."). Early estimates suggest that the average cost reduction when MERS acts as an "assignee" were "between $15 and $17 a loan." Lipton, *supra* note X, at 2. More recent estimates suggest that using MERS saves lenders and servicers approximately $40 over the entire life of a mortgage loan. David F. Borrino, *MERS: Ten Years Old*, USFN, http://imis.usfn.org/Resources/ArticleLibrary/1733.aspx, (May 11, 2006) viewed July 13th, 2006

[15] MERS, STATE BY STATE MERS RECOMMENDED FORECLOSURE PROCEDURES, *supra* note X, at 8 ("Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS…In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.")

-9-

MERS eventually convinced financiers to simply do away with the first assignment to MERS, and instead list them as the mortgagee in the original mortgage. Once again: MERS does not actually advance any loan principal to the homeowner, or have the rights to receive any payments from the borrower, or even an actual party of interest.

## MERS HAS APPEARED AND ANSWERED

In their Rule 12(b)(6) Motion to Dismiss MERS and ONEWEST first argue that the Plaintiffs have not perfected serviced and that the case should be dismissed pursuant to 12(b)(5). The argument is moot and pointless because MERS and ONEWEST have appeared and answered thereby perfecting service themselves.

## ACTION AGAINST MERS AND ONEWEST IS NOT BARRED BY RES JUDICATA

MERS and ONEWEST further argue that action by Plaintiff Renada March against them is barred by res judicata in that a decision was already made by the lower bankruptcy Court. Plaintiffs argue that res judicata does not apply simply because the Bankruptcy Court's Order was an Order allowing relief from stay, not an order granting a judicial foreclosure. Further Res Judicata, strictly bars actions that have already been decided. Plaintiff March, is not suing MERS or ONEWEST for obtaining a lift from stay, but rather what they did (by their own accord through administrative proceedings) after they received relief from the stay.

Administrative proceedings do not need orders of any kind. A bank can simply send a series of letters without any court approval. Res Judicata cannot possibly apply due to the non-judicial process so the argument is irrelevant.

## THE PLEADINGS STATE A CLAIM FOR RELIEF

Plaintiffs asserted several clear and simple arguments against MERS and ONEWEST regarding breaches of the 1) California Commercial Code, 2) covenant

-10-

of good faith and fair dealing and now 3) they've augmented those arguments by outlining the history of MERS here in this very Motion.

## ADMISSABLE JOINERS

MERS and OneWest go on to argue (page 6 par. 12) that neither Defendant was properly joined in this suit because only Plaintiff March had any dealings with MERS. They make this argument based on FRCP Rule 20, but (rather tellingly) they fail to actually cite the code, instead they cite a case that supposedly cites the rule.

The Defendants cite Applewhite v. Reichhold Chems when they argue that a "right to relief arises from the same transaction identified by other plaintiffs and there is at least one common question of law or fact." Though Applewhite v. Reichhold Chems may hold that opinion FRCP Rule 20 allows to *jointly and severally* hold separate Defendants accountable.

**(a) Persons Who May Join or Be Joined.**
**(1) Plaintiffs.**
Persons may join in one action as plaintiffs if:
(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all plaintiffs will arise in the action.
**(2) Defendants.**
Persons — as well as a vessel, cargo, or other property subject to admiralty process in rem — may be joined in one action as defendants if:
(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all defendants will arise in the action.
**(3) Extent of Relief.**
Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

**(b) Protective Measures.**
The court may issue orders — including an order for separate trials —
to protect a party against embarrassment, delay, expense, or other
prejudice that arises from including a person against whom the party
asserts no claim and who asserts no claim against the party.

Plaintiffs conclude that, pursuant to the very code the Defendants cited, they

have every right to join together against each Defendant jointly and or severally

against MERS. Furthermore Plaintiffs Dan Mack and Joseph Cohen did have

dealings with Defendant MERS (which was listed as "nominee" on both of their

original loans).

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1
2
3
4
5
6
7       **PLAINTIFFS RESPONSES TO DOCUMENT 52**
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28      **RESPONSE TO PART 1 OF DOCUMENT 52**

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1

2

3    Defendants Silverstein, GRE Development and Elter's Rule 12(b)(6) Motion

4    argues that Plaintiffs did not state a cause of action. Plaintiffs assert that they state

5    multiple causes of action in their third amended Complaint against Silverstein

6    including violations of due process, violations of California Business and

7    Professions Code Section 145[16] as well as breaches of good faith and fair dealing.

8    These allegations were not made with just simple statements but were well

9    supported with case law and evidence attached as exhibits. The idea that the

10   sentences were somehow not plain enough or simple enough ignores just how

11   complex the overall issues are. Plaintiffs have provided numerous allegations well

12   supported by evidence but the issues are too numerous and too complex to rely on

13   simple statements. This Court appears to agree, and has allowed the Plaintiffs to

14   amend because the allegations or deficiencies therein can be cured via amendment.

15   Plaintiffs augmented their complaints an extra 40-50 pages, breaking up each set of

16   allegations to constitutional challenges, bad policies and the specific allegations

17   against the banks, servicers and the men (and entities) that "buy" from the banks and

18   servicers.

19   The Supreme Court of the United States held in ***Greenwood v. Peacock*** that

20   **"Under § 1443(1), the vindication of the defendant's federal rights is left to the**

21   **state courts except in the rare situations where it can be clearly predicted by**

22   **reason of the operation of a pervasive and explicit state or federal law that**

23   **those rights will inevitably be denied by the very act of bringing the defendant**

24

---

25   [16] 145. The Legislature finds and declares that:   (a) Unlicensed activity in the professions and
     vocations regulated by the Department of Consumer Affairs is a threat to the health, welfare, and
26   safety of the people of the State of California.   (b) The law enforcement agencies of the state
     should have sufficient, effective, and responsible means available to enforce the licensing laws of
27   the state.   (c) The criminal sanction for unlicensed activity should be swift, effective, appropriate,
     and create a strong incentive to obtain a license.
28

-14-

1

2

3  **to trial in the state court.** ***Georgia*** v. ***Rachel, ante; Strauder v. West Virginia, 100***

4  ***U.S. 303."*** 384 U.S. 808, 828, 86 S.Ct. 1800, 1812, 16 L.Ed.2d 944, 957 (1966).

5       Defendants further argue that either the issues against them have either

6  already been decided or should be decided in state Court citing the Rooker-Feldman

7  doctrine all the while.

8       In her opinion taken from ***Exxon Mobil Corp. v. Saudi Basic Industries Corp.***,

9  544 U.S. 280 (2005), <u>Justice Ginsburg</u>, writing for a unanimous Court, reversed the

10  Third Circuit's decision and remanded the case. She began her decision with a fairly

11  concise retelling of the holdings in both the *Rooker* and *Feldman* cases. She then

12  held that the Rooker-Feldman doctrine "is confined to cases of the kind from which

13  the doctrine acquired its name: cases brought by state-court losers complaining of

14  injuries caused by state-court judgments rendered before the district court

15  proceedings commenced and inviting district court review and rejection of those

16  judgments. Rooker-Feldman does not otherwise override or supplant preclusion

17  doctrine or augment the circumscribed doctrines that allow federal courts to stay or

18  dismiss proceedings in deference to state-court actions."

19

20  *In **Lance v. Dennis***, 546 U.S. 459, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006)

    *Rooker*-*Feldman* doctrine did not deprive federal district court of jurisdiction over
21
    voters' action challenging state supreme court decision in separate case, which held
22
    that state legislature's redistricting plan violated state constitution and that
23
    redistricting plan created by state courts should be used instead; state court action
24
    was brought by state attorney general against secretary of state, voters were not
25
    parties to that action, and voters were not in a position to seek review of the state
26
    court's judgment. The US Supreme Court further held in Lance V. Dennis that
27
    "Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the
28
    jurisdiction of lower federal courts, and our cases since *Feldman* have tended to

-15-

1
2
3    emphasize the narrowness of the *Rooker-Feldman* rule. See *Exxon Mobil,* 544 U.S.,
4    at 292, 125 S.Ct. 1517 ( *Rooker-Feldman* does not apply to parallel state and federal
5    litigation); *Verizon Md. Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 644, n. 3,
6    122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) ( *Rooker-feldman* "has no application to
7    judicial review of executive action, including determinations made by a state
8    administrative agency"); *Johnson v. De Grandy,* 512 U.S. 997, 1005-1006, 114 S.Ct.
9    2647, 129 L.Ed.2d 775 (1994) ( *Rooker-Feldman* does not bar actions by a nonparty
10   to the earlier state suit). Indeed, during that period, "this Court has never applied
11   *Rooker-feldman* to dismiss an action for want of jurisdiction." *exxon mobil, supra,* at
12   287, 125 S.Ct. 1517."

13        Plaintiffs argue that this is a parallel litigation and that federal questions
14   (invoking civil rights removals) allow this case to be heard federally. Given that the
15   Plaintiffs have already questioned the jurisdiction of the UD Courts in their third
16   amended complaint Plaintiffs reiterate and argue again that evictions in a non-
17   judicial foreclosure state act as de facto foreclosure suits. Evictions are the
18   conclusions of non-judicial foreclosures and provide the only platform for
19   consumers, tenants and one time owners, to fight foreclosure.  Possession is, after
20   all, 9 points of the law and Plaintiffs argue that transferring possession from a
21   former owner to a new buyer is akin to transferring money from one person to the
22   other. The price and worth of each property exceeds the limits of the UD Court's
23   jurisdiction.

24        Further the complexities of the case, the level of discovery, the far reaching
25   implications regarding the unconstitutionality of California State laws are not
26   decisions the lower UD Courts can make.

27
28
                                                  -16-

1
2
3
4

## **RESPONSES TO PART 2 OF DOCUMENT 52**

5   Defendants Silverstein, GRE Development and Elter go on to argue that none of the
6   California State Statutes the Plaintiffs question are unconstitutional simply because
7   they have never been declared unconstitutional. YET. The argument is not really an
8   argument; instead it is more of a sad history lesson of bad laws staying alive.

9          Simply put the Plaintiffs are asking this Court to be the first to render these
10  state laws unconstitutional, no matter whether or not any other Court has heard these
11  arguments or made decisions based on such arguments.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-17-

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1
2
3
4
5
6
7
8
9
10

**PLAINTIFFS RESPONSES TO DOCUMENT 51-1**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-18-

**RESPONSE TO ANTI-SLAPP**

California's anti-SLAPP law provides a civil action whose effect is to enhance the freedom of speech and right to petition of defendants by limiting the right of Plaintiffs to free speech and to petition. In 1992, the Legislature enacted section 425.16 to provide a procedure for a court "to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." ***Sipple v. Foundation for Nat. Progress*** (1999) 71 Cal. App. 4th 226, 235.

Taken in conjugation with §2924 the Defendant Silverstein has used this statute to minimize the Plaintiff Lincoln's ability to petition this Court for relief, by requesting the dismissal of this action.

In Silverstein's new Anti-Slapp Motion (Document # 51-1) he makes a rousing argument on behalf of one of the most ridiculous and backwards provisions in California law by saying:

"There is a strong public policy in favor of allowing publications in the course of judicial proceedings regardless of their perceived content. Indeed, our Supreme Court has observed that a communication need not itself be "accurate" or "truthful" for the privilege to attach but simply within the "category of communication permitted by law." (Jacob B. v.County of Shasta (2007) 40 Cal. 4th 948,959(Jacob B.).)"

*See* Doc #51-1, page 15 par. 5

Defendant Silverstein seems to be arguing that, because of his special stature as a lawyer and the protected status of the correspondence he mailed out during evictions, he should be allowed to take interest in any property he so chooses without regards to truth or accuracy. Though Defendant Silverstein fails to precisely define the "correspondence" that he is privileged to under Anti-Slapp. Plaintiffs argue that Silverstein Anti-Slapp is using Anti-Slapp to send out eviction suits and

-19-

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1

2

3   letters leading up to those suits, using phony, unregistered companies to evict and

4   take possession of property he nor the "companies" he represents, has interest in.

5       Plaintiffs argue that this is precisely why the Anti-Slapp laws of California

6   violate their rights to due process and their rights to petition the Court for

7   grievances. The very idea that there are special classes of correspondence that are

8   off limits to examination is utterly absurd and allows Silverstein and co to create

9   phony shell businesses in order to continue to collect real estate.

10      Further the Plaintiffs have filed evidence with this Court proving that Silverstein

11  1) represents unregistered business entities (11 Lighthouse Trust) and 2) Silverstein

12  shares an office and has interest in those entities (such as GRE Development).

13  Further they have verified these allegations with affidavits from all of the Plaintiffs

14  in this suit.  The exhibits filed with the Plaintiffs pleadings constitute prima facia

15  evidence showing possible success of the merits of this case should the case go to

16  trial. *See Salma v. Capon* 161 Cal.App.4th 1275 (2008). Further, and more

17  importantly, it shows that Silverstein is utilizing existing (and backwards) California

18  Laws to his advantage by using all of these protective statutes to defraud

19  homeowners.

20      Plaintiffs now have to ask this Court why (as Silverstein claimed) does California

21  public policy support Anti-Slapp other than to defraud the public by creating,

22  defining and upholding different classes of people? Anti-Slapp, along with Cal Civ

23  Code 1714.10, protects and insulates lawyers and the corporations they may

24  represent from due process of law and accountability arising from any actions

25  therein. Simply because a lawyer files a pleading does not make it an honest filing,

26  which is why the Plaintiffs must ask this Court, once again, to declare and adjudge

27  that the Anti-Slapp laws are unconstitutional and all but blatantly prohibit due

28  process and the right to petition.

-20-

Plaintiffs allege that the California anti-SLAPP law embodied in §425.16 et seq. constitutes an unconstitutional infringement upon the First, Fifth, Ninth and Fourteenth Amendments to the Constitution, as well as a plain violation of the right to sue and give evidence secured by 42 U.S.C. §1981.

## FORCIBLE DETAINER

In an action of forcible entry and detainer, a defendant may introduce evidence of title in himself, not for the purpose of establishing or trying title, but for the purpose of showing that his entry, if wrongful, was not made with a wrongful intent, but in good faith; and that the fact that he does so does not entitle the plaintiff, in rebuttal, to introduce evidence showing title in himself.

Though Silverstein objects and denies the forcible detainer action filed against him he has not provided any evidence proving interest in the property. When he originally bullied the tenants out of the real property located at 4 Via Corbina he did not provide any evidence of interest proving he was a bona fide purchaser of the note.

The question as to what constitutes an unlawful entry within the meaning of the statute has been declared to be an entry made in bad faith, without any *bona fide* claim or color of legal right, and not an entry made under claim of title asserted in good faith. *See*

-21-

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

## CALIFORNIA CIVIL CODE §1714.10
### *STILL* DOES NOT IMMUNIZE SILVERSTEIN

Defendant Silverstein in his Anti Slapp Motion argues still that the Plaintiffs have to ask leave of Court to sue him. Given that this Court has allowed for multiple amendments and (at least for the moment) allowed this case to stand for over a year the Plaintiffs might argue that such a motion would be moot at this point.

In particular, GRE Development shares an office with Steven David Silverstein and the 4 Via Corbina trust, and Plaintiffs allege that Silverstein is acting not merely in the course of representation of a client in Lincoln's case (4 Via Corbina/GRE Development) at least, but on his own behalf and for his own benefit.

There was no arms length transaction involving the sale of 4 Via Corbina and so GRE Development and/or the 4 Via Corbina Trust are not bona fide purchasers for value---they could not have been bona fide purchasers in any event because they took from Cal-Western Reconveyance nine months after Charles Edward Lincoln tendered payment in full to Wells Fargo Bank and Cal-Western Reconveyance, asking only for proof of Wells Fargo's status as "holder in due course" which is merely "conditional" in the sense that Wells Fargo prove its entitlement to collect so much as one dime on the subject property 4 Via Corbina in Rancho Santa Margarita.

Plaintiffs further allege that any rule, even if not facially unconstitutional, is unconstitutional as applied according to a state judicial norm "which requires a judicial determination of reasonable probability of success prior to permitting the filing of an action against an attorney based on a claim of civil conspiracy with a client" because such a rule (as articulated by Defendants) constitutes a per se denial of equal access to the courts due process and of equal access to the courts and legal processes in violation of 42 U.S.C. §1981.

-22-

1

2

3    Access to discovery of facts is a key element of due process of law and equal

4    access to the Courts as discovery procedures are often critical to the determination

5    of the accuracy or inaccuracy of any legal complaint, suit at law, or equitable action.

6    Plaintiffs allege that Steven David Silverstein's relationship with the Judges

7    of the Orange County Superior court is so close and intimate that there exists a

8    continuing and ongoing agreement and understanding between them in derogation

9    of due process of law and equal protection of persons and property, in violation of

10   42 U.S.C. §§1981, 1982 and also of the 5th and 14th Amendments.

11   Plaintiffs allege that §1714.10 bestows upon attorneys a special class of

12   privileges and immunities to a certain class of professional practitioners whose

13   membership is controlled by "admission to the bar" under terms mandated and

14   outlined by the state of California itself, such that §1714.10 has the force and effect

15   of a law erecting or defining a title of nobility, unconstitutionally impairing the

16   obligations of contract by exempting certain actors from contractual ethics or duties

17   including but not limited to the implied duty of good faith and fair dealing in

18   contractual dealings, as well as the general obligation to abstain from common law

19   tortuous or civil law delictual conduct which leads to civil injuries arising not from

20   but from Anglo-America tort or Continental Civil [aka "Napoleonic"] Code delict.

21   **PLAINTIFFS CAN PREVAIL ON THE MERITS OF THE CASE**

22   Defendants Silverstein, et al, further argued in their Anti-Slapp Motion (Doc 51-1)

23   that Plaintiffs could not prevail on the merits of this case. Their argument relies on

24   the question of tender (see pages 17-18). Plaintiffs have argued and will argue now

25   that only the true note holder could request tender. Plaintiffs argue that Defendants,

26   if they really would like the Plaintiffs to tender payment, should first prove they

27   have the note and submit it to an examination as a result. If Defendants want to act

28   as though they have the right to request and require tender they should have to prove

-23-

they have actual interest. Plaintiffs argue that this has not happened, not because Defendants are lazy or misplaced their note or think it's moot, it's because the Defendants cannot produce actual interest in the real properties in question, else they would have submitted the notes they bought to this Court. Unless or until that happens the question of tender should be moot.

Defendants complain that (on page 19, par 3):

> "Lincoln has not tendered, nor offered to tender, the full amount owing. Therefore, Lincoln has no standing to challenge the foreclosure sale or any related claims. Plaintiffs further do not provide timelines of when their loans were received, nor what interest rate they secured, nor how man payments, or what size of payments they made on their loan"

The argument isn't quite clear here, but Plaintiffs see all of the above cited requirements (unsupported by law) are moot because the Defendants have no right to ask for such information, besides the relevance of such information to these Defendants (and not the banks) seems unclear.

Further the Plaintiffs argue that the very concept of tender is unrealistic, overly cumbersome and impairs their ability to petition this Court for grievances due to fraudulent conveyances, foreclosures and evictions. Truly, it is as though the lawmakers of the state of California conspired together to hurt consumers and possible Plaintiffs, keeping them from adequately finding justice.

## CALIFORNIA BUSINESS CODE

Defendants Silverstein, GRE Development and Ron Elter accuse the Plaintiffs of vague arguments using the California Business Code § 17200 in their Anti-Slapp motion. See page 24 of Doc 50-51.

Plaintiffs Joseph & Carol Regina Cohen allege and submit that Carol H. Meyer, Kenneth Meyer, and the 11 Lighthouse Trust were never properly authorized to do business in California, that these individuals are like "shape-shifters" who constantly change their identity for purposes of making fraudulent purchases in bad

-24-

faith, acting often if not always in concert with Steven D. Silverstein, such that no purchaser of these Plaintiffs' property could have done so in good faith, or otherwise qualified as bona fide purchasers for value within the meaning of §1695.14(c).

Plaintiffs Joseph and Carol Cohen assert that Defendant Silverstein has wrongfully used §2924 to defraud them of their property by using a "dummy" trust that is not even recognized as a business entity of any kind by the State of California.

Plaintiffs Joseph and Carol Cohen received a notice of Unlawful Detainer action from the "Catherin H. Meyer Lighthouse Trust", by and through their attorney, Steven D. Silverstein.

Plaintiffs Joseph and Carol Cohen, after having tried to contact the Trust received a letter from the Secretary of the State of California that the business entity was unregistered a violation of California Business and Professions Code Section 145[17].

_____

[17] 145. The Legislature finds and declares that:    (a) Unlicensed activity in the professions and vocations regulated by the Department of Consumer Affairs is a threat to the health, welfare, and safety of the people of the State of California.    (b) The law enforcement agencies of the state should have sufficient, effective, and responsible means available to enforce the licensing laws of the state.    (c) The criminal sanction for unlicensed activity should be swift, effective, appropriate, and create a strong incentive to obtain a license.

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1
2
3
4
5
6
7
8
9
10 **<u>MOTION TO CONVERT 12(b) MOTIONS</u>**
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

1
2
3
4
5

## <u>MOTION TO CONVERT PURSUANT TO RULE 12(d)</u>

Defendant MERS and ONEWEST file a Rule 6(b) Motion to Dismiss (doc # 49) against the Plaintiffs. The Motion to Dismiss was coupled with a Judicial Notice to the Court to take in consideration 11 exhibits, some of which were presented outside of the information given in the pleadings.

Plaintiffs now request that this Court convert the Rule 6(b) motion from MERS and ONEWEST to a Rule 56 Motion for Summary Judgment pursuant to Rule 6(d)[18].

Defendants Elter, Silverstein, GRE Development, MERS and ONEWEST all cited the Rooker-feldman doctrine saying that either the case was decided with foreclosure or that the cases were decided with eviction.

MERS cited a non-judicial foreclosure that relied on letters and administrative proceedings as though it were judgment from a Court (constituting res judicata). Plaintiff March argues that non-judicial foreclosures do not constitute judgments in a lower court. Nor does an order relieving MERS and ONEWEST from an automatic stay in Bankruptcy. The Order allowed for a non-judicial foreclosure, it didn't Order a foreclosure.

_____

[18] (d) Result of Presenting Matters Outside the Pleadings.

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under <u>Rule 56</u>. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

-27-

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1

2

3

4

5

**CONCLUSION**

6    WHEREFORE it is prayed that this Court uphold the allegations within the third

7  amended complaint and strike Defendant Silverstein, Elter and GRE Development's

8  Anti Slapp Motion and convert the 12(b)(6) Motions to a Rule 56 Motion and finally

9    allow the Plaintiffs to file a fourth Amended Complaint.

10    **CERTIFICATE OF CONFERENCE**

11    Plaintiffs certify that they conferred with the Defendants regarding the above

12  Motion to Covert and the Defendants ___ could not be reached , __ agreed to

13  stipulate to the conversion ___ did not agree to stipulate to the conversion.

14    **CERTIFICATE OF SERVICE:**

15    Plaintiffs Charles Edward Lincoln, III, Renada Nadine March, Daniel Mack,

16  Joseph Cohen and Carol Cohen certify that they have served a true and correct copy

17  of this First Amended Complaint upon the Defendants' counsel by facsimile

18  transmission to (714) 363-0229 as well as by electronic (e-mail) attachment to Larry

19  Rothman's e-mail address shown as tocollect@aol.com on the cover sheet of

20  Rothman's original filing for Defendant Silverstein, and by regular mail or courier

21  deliver to the attorney for Steven David Silverstein and the attorneys for MERS and

22  ONEWEST:

23                    Larry Rothman & Associates
                      Larry Rothman, State Bar No. 72451
24                 City Plaza, 1 City Boulevard West, Suite 850
                      Orange, California 92868
25

26                   DAVID R. ZARO (BAR NO. 124334)
                 JOSHUA A. DEL CASTILLO (BAR NO. 239015)
27                   NANCY M. LEE (BAR NO. 266213)
                   ALLEN MATKINS LECK GAMBLE
28                     MALLORY & NATSIS LLP

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1

2

3    E-mail:**renadajewel@gmail.com**

4

5

6

7

8    Respectfully signed & submitted,

9    Monday, November 22nd, 2010

10

11   By:_____

12   JOSEPH COHEN, *pro se*
     11 Lighthouse Pt.

13   Aliso Viejo, California 92656
     Tel: 949-300-1870

14

15

16   Respectfully signed & submitted,

17   Monday, November 22nd, 2010

18

19   By:_____

20   CAROL COHEN, *pro se*
     11 Lighthouse Pt.

21   Aliso Viejo, California 92656
     Tel: 949-300-1870

22   Plaintiff *in propia persona*

23

24

25

26   Respectfully signed & submitted,

27   Monday, November 22nd, 2010

28
     By:_____
     -30-

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
jdelcastillo@allenmatkins.com
nlee@allenmatkins.com


Attorneys for Defendants
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.


Signed & Respectfully submitted,

Monday, November 22nd, 2010


**Diane Beall,**
**Attorney for Charles Lincoln**
Advocate's Law and Real Estate
243 South Escondido Boulevard
Escondido, CA 92025
760-807-9147


Respectfully signed & submitted,

Monday, November 22nd, 2010


By:
RENADA NADINE MARCH, *pro se*
7 Bluebird Lane
Aliso Viejo, California 92656
Telephone: 949-742-0436

-29-

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1

2

3   Aliso Viejo, California 92656

4   Telephone: 949-742-0436
    E-mail:**renadajewel@gmail.com**

5

6

7

8

9   Respectfully signed & submitted,

10  Monday, November 22nd, 2010

11

12  By:_____

13  JOSEPH COHEN, *pro se*

14  11 Lighthouse Pt.
    Aliso Viejo, California 92656

15  Tel: 949-300-1870

16

17

    Respectfully signed & submitted,

18  Monday, November 22nd, 2010

19

20  By:_____

21  CAROL COHEN, *pro se*

22  11 Lighthouse Pt.

23  Aliso Viejo, California 92656
    Tel: 949-300-1870

24  Plaintiff *in propia persona*

25

26

27  Respectfully signed & submitted,

28  Monday, November 22nd, 2010

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*      -30-      *DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1

2

3 DANIEL MACK, *pro se*
31321 Don Juan Avenue,
4 San Juan Capistrano, California, 92657
Tel: 949-278-2711
5

6

7

8

9 Respectfully signed & submitted,

10 Monday, November 22nd, 2010

11

12 _Alicia Singh_

13 Alicia Singh
1394 Arrowhead Drive
14 Placentia, CA92870
Plaintiff *in propia persona*
15

16

17 _Richard Mendez_

18 Richard Mendez
1394 Arrowhead Drive
19 Placentia, CA92870
Tel: 714-269-3341
20 Plaintiff *in propia persona*

21

22

23

24

25

26

27

28

-31-

**COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A:**
*"DECLARATION OF CLAUDIA MACK"*

1
2
3
4
5

## PROOF of SERVICE

6   We the undersigned Plaintiffs Charles Edward Lincoln & Richard Mendez do
7   hereby certify that we have filed and served a true and correct original signed copy
8   of the above-and-foregoing:

9   ## THIRD AMENDED COMPLAINT
    Simultaneously, by e-mail and facsimile transmission to each of the following
10  attorneys of Record for Steven David Silverstein, Cal-Western Reconveyance, and
11  Wells-Fargo Bank, N.A.:

LARRY ROTHMAN & Associates
12  LARRY ROTHMAN, State Bar No. 72451
    City Plaza, 1 City Boulevard West, Suite 850
13  Orange, California 92868
14  By e-mail: tocollect@aol.com
    Via Facsimile: (714) 363-0229
15

16  THOMAS N. ABBOTT
    PITE DUNCAN, L.L.P.
17  4375 JUTLAND DRIVE, SUITE 200
    P.O. BOX 17395
18  SAN DIEGO, CALIFORNIA 92177-0935
19  VIA FACSIMILE: 619-590-1385
    tabbott@piteduncan.com
20

21  DAVID R. ZARO (BAR NO. 124334)
    JOSHUA A. DEL CASTILLO (BAR NO. 239015)
22  NANCY M. LEE (BAR NO. 266213)
    ALLEN MATKINS LECK GAMBLE
23  MALLORY & NATSIS LLP
24  515 South Figueroa Street, Ninth Floor
25  Los Angeles, California 90071-3309
    Phone: (213) 622-5555
26  Fax: (213) 620-8816
27  E-Mail: dzaro@allenmatkins.com
    jdelcastillo@allenmatkins.com
28  nlee@allenmatkins.com

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*

-33-

*DIANA BEALL, attorney for Lincoln*
243 SOUTH ESCONDIDO BOULEVARD
ESCONDIDO, CA 92025

1
2
3
4
5
6
7
8
9
10
11
12

Attorneys for Defendants
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (erroneously sued as "Mortgage
Electronic Registration Services") and ONEWEST
BANK, FSB (erroneously sued as "OneWest
Bank, NA")

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Diane Beall,**
**Attorney for Charles Lincoln**
Advocate's Law and Real Estate
243 South Escondido Boulevard
Escondido, CA 92025
760-807-9147

**RICHARD MENDEZ, plaintiff,** *pro se*
**E-Mail: mendez_richard@hotmail.com**
**Telephone: 714-269-3341**

A DECLARATION OF CLAUDIA MACK CONCERING CIRCUMSTANCES SURROUNDING HER
UNLAWFUL EVICTION (AND THAT OF HER DAUGHTERS AND HUSBAND) ON JULY 26th, 2010

On Monday, July 20th, 2010, at about 10:45am, I was driving out of the complex where our home was to take some things to my sister-in-law's house. When I saw the sheriff's car going to our home's direction, I thought maybe he was going to look for us since we had only until 5:00 p.m. to get out of our home that day, and I decided to go back to check if he was going there. I saw he stopped in my house and he was asking something to the neighbor.

I approached him and he asked me where we were at with the moving. I told him that I was moving most of the things to my sister-in-law's house and that my husband was filing bankruptcy at the court as we spoke. Sheriff P. Grieifelt (#2501) presented me with his card and said that that it was ok, but that I should try to get as much as I could out of the house. He said the bankruptcy was filed correctly and supported with the appropriate documentation it was going to stop the eviction for that day. Sheriff P. Griefelt (#2501) also told me to tell my husband that he should take copies of the bankruptcy filings to the Laguna Hills Sheriff's station; that to take them to the Newport Beach Sheriff's Department would only take longer. But Sheriff P. Griefelt (#2501) also said that we shouldn't get very comfortable and confident that the bankruptcy was a guarantee of staying in the house because the attorney could go and file something to continue the eviction and that even a phone call from the attorney would be enough for him to come back and take us out of the house. Sheriff P. Griefelt (#2501) also said that if that was the case, he wouldn't give us notice or warning about this; he would just knock at the door and evict us and we would have to leave the house immediately. He said that this could be in a week, a day, or even the next morning that he could be back.

I asked Sheriff P. Greifelt (#2501) if he could be back later the same day and he said he didn't think he was going to have time to come back that day, but to be aware the next morning because if it was required he could be back then. Then he left.

Later that afternoon my husband informed me that he had filed the bankruptcy in the federal court and had delivered copies of it to both the Laguna Hills Sheriff's station and the Newport Beach Sheriff's station.

Less than one week later, on Monday, July 26th, I was at home with my two daughters (4 and 6yrs) and we heard the doorbell. Sheriff P. Greifelt (#2501) was there with a locksmith. When I opened the door, he said "You're out! You have about 10 minutes to take what's important for the kids; their food, medicine, clothing." I asked if I could call my husband and he said "yes, you can call him." I ran upstairs to grab the suitcase to throw the girl's clothing and medicines and toys in and also to call my husband on the phone. My husband told me to ask Sheriff P. Griefelt (#2501) for any supporting documentation that gave him the authority to evict us under the bankruptcy stay. (The locksmith was already changing the locks on the front door and I went to find the Sheriff in the garage to ask him for any documentation.) Sheriff P. Greifelt (#2501) looked at his clipboard and he couldn't find anything to show me. He couldn't give me any justification at that time. I ran back into the house to grab what was packed and

1

left with my girls.  Because I forgot my daughter's asthma medication, I turned around immediately to get it, which I did before leaving to go who knows where.

Claudia Constanza Mack

Claudia Mack   11-20-10

2

1

2

3

4

5

6

7

8

9
## **PROOF of SERVICE**
We the undersigned Plaintiffs Charles Edward Lincoln & Richard Mendez do

10
hereby certify that we have filed and served a true and correct original signed copy

11
of the above-and-foregoing:

12
## THIRD AMENDED COMPLAINT
13
Simultaneously, by e-mail and facsimile transmission to each of the following

attorneys of Record for Steven David Silverstein, Cal-Western Reconveyance, and

14
Wells-Fargo Bank, N.A.:

15
LARRY ROTHMAN & Associates

LARRY ROTHMAN, State Bar No. 72451

16
City Plaza, 1 City Boulevard West, Suite 850

Orange, California 92868

17
By e-mail: tocollect@aol.com

18
Via Facsimile: (714) 363-0229

19

THOMAS N. ABBOTT

20
PITE DUNCAN, L.L.P.

4375 JUTLAND DRIVE, SUITE 200

21
P.O. BOX 17395

SAN DIEGO, CALIFORNIA 92177-0935

22
VIA FACSIMILE: 619-590-1385

23
tabbott@piteduncan.com

24
DAVID R. ZARO (BAR NO. 124334)

25
JOSHUA A. DEL CASTILLO (BAR NO. 239015)

NANCY M. LEE (BAR NO. 266213)

26
ALLEN MATKINS LECK GAMBLE

27
MALLORY & NATSIS LLP

515 South Figueroa Street, Ninth Floor

28
Los Angeles, California 90071-3309

Phone: (213) 62235555

*COMBINED RESPONSE TO DOCUMENTS 49, 50, 51-1*                    *DIANA BEALL, attorney for Lincoln*

243 SOUTH ESCONDIDO BOULEVARD

ESCONDIDO, CA 92025

Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
jdelcastillo@allenmatkins.com
nlee@allenmatkins.com


Attorneys for Defendants
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (erroneously sued as "Mortgage
Electronic Registration Services") and ONEWEST
BANK, FSB (erroneously sued as "OneWest
Bank, NA")



_____
**Diane Beall,**
**Attorney for Charles Lincoln**
Advocate's Law and Real Estate
243 South Escondido Boulevard
Escondido, CA 92025
760-807-9147


_____
**RICHARD MENDEZ, plaintiff,** *pro se*
**E-Mail: mendez_richard@hotmail.com**
**Telephone: 714-269-3341**

-33-