1

2

3  Renada Nadine March
   Richard Eugene Mendez, *pro se*
4  2375 20th St.
   Signal Hill, CA 90755
5  Tel: 949-276-1970

6  Charles Edward Lincoln, III, *pro se*
7  c/o Peyton Yates Freiman
   Tierra Limpia/Deo Vindice
8  603 Elmwood Place, Suite #6
   Austin, Texas 78705
9  CEL Tel: 512-968-2500
   E-Mail: lincoln_for_california@rocketmail.com
10

11  Dan Mack, *pro se*
    321 Don Juan Avenue
12  San Juan Capistrano, 92675
    Tel: 949-481-8447
13  Plaintiffs *in propia persona*

14
                **UNITED STATES DISTRICT COURT**
15      **CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION**
                          **(SANTA ANA)**
16

17  Charles Edward Lincoln, III,          §
    Renada Nadine March,                  §    CASE   NUMBER:
18  Daniel Mack; Joseph Cohen; Carol Cohen, §  No. SACV09-1072 DOC (Ex)
19  Richard Mendez, Alicia Singh,         §
    Plaintiffs,                           §
20                                        §    Plaintiffs'
                                          §    RESPONSE TO ORDER TO
21  v.                                    §    SHOW CAUSE AND
                                          §    REQUEST FOR JUDICIAL
22  The State of California, *et al.*      §    NOTICE OF LEGAL
    §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ MALPRACTICE
23

24  _____

25      Come now Plaintiffs with this their Response to Order to Show Cause and

26  Request for Judicial Notice of Legal Malpractice in response to this Court's

27  August 30, 2011, Order to Show Cause why this case should not be dismissed.

28  In its order, the Court asked the Plaintiffs why the remaining Defendants had

    not yet been served, and why the case should not be dismissed as a result.

*PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE*     -1-     *Charles E. Lincoln, Plaintiff, pro se*
*AND REQUEST FOR JUDICIAL NOTICE OF LEGAL*                 *c/o Peyton Yates Freiman*
*MALPRACTICE*                                              *603 Elmwood Pl., #6, Austin, TX 78705*

### ARGUMENT & INTRODUCTION

Though this court has the power to dismiss an action for **want** of **prosecution** on its own motion, both under Rule 41 (b), F.R.Civ.P., or under its local rule[1] the exercise of this power to dismiss is discretionary and can be reversed due to abuse of discretion. *Fitzsimmons v. Gilpin,* 368 F.2d 561 (9th Cir. 1966). Plaintiffs believe and argue here, that in light of the issues concerning legal malpractice, funding and inner turmoil, it would be nothing short of an abuse of discretion to dismiss this action for want of prosecution.

The plaintiff "has the ultimate burden of persuasion both as to the excuse for his own delay and as to lack of prejudice to the defendant." *Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 67 (2d Cir. 1963). Plaintiffs can and will prove that their excuses are valid and the remaining Defendants will NOT be prejudiced with the continuation of this case.

Lastly, "Dismissal of complaint as penalty for delay is option only when plaintiff's misconduct is "extreme." *Enlace Marcantil Internacional, Inc. V. Senior Industries, Inc.,* 848 F. 2d 315, 11 Fed.R.Serv.3d 799. Plaintiffs argue that their misconduct is not extreme due to the circumstances that are outlined in this response and their argument: (1) the Plaintiffs hired one attorney for exchange and trade of services (Diane Beall) who officially appeared and then obstructed the progress of this case consistently and totally for the past year without reason or professional justification of any kind, (2) the Plaintiffs hired another attorney (Dennis Martin Russell) to whom Renada Nadine March paid $5,000.00, and this attorney utterly failed to appear but also obstructed the progress of this case and insured the eviction of Renada Nadine March from her

---

[1] *Pearson v. Dennison*, 353 F.2d 24, 28 (9th Cir. 1965); *Hicks v. Bekins Moving & Storage Co.*, 115 F.2d 406, 408-409 (9th Cir. 1940). Also in point is *Link v. Wabash Ry.* Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)

home in complete breach of Professional standards and duties of competence, diligence, loyalty, and communication, (3) so that accordingly, the lack of progress in this case is essentially not Plaintiffs' fault at all.

## A. LEGAL MALPRACTICE

The elements of a **legal malpractice** claim are: "[1] the existence of an attorney-client relationship, [2] the existence of a duty on the part of a lawyer, [3] failure to perform the duty, and [4] the negligence of the lawyer as a proximate cause [5] of damage to the client." ***Warmbrodt v. Blanchard***, 100 Nev. 703, 692 P.2d 1282, 1285 (1984)

Plaintiff Charles E. Lincoln III initiated this case *pro se*, as of October 2010, he later retained counsel (Diane Beall Templin) who has failed to provide any notable work on this case of any kind (see his Declaration attached as Exhibit A) in violation of the California Bar Rules of Professional Conduct 3-110[2]. Further the remaining Plaintiffs did not possess the funds to retain counsel for themselves (save for Renada March who had similar problems with her attorney).

After agreeing to represent Lincoln and being retained, Beall had promised, and represented to the Court in her Motion to Appear as Counsel, that she would work closely with Plaintiff Lincoln. As Lincoln's attorney, Beall

---

[2] (A) A member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence.

(B) For purposes of this rule, "competence" in any legal service shall mean to apply the 1) diligence, 2) learning and skill, and 3) mental, emotional, and physical ability reasonably necessary for the performance of such service.

(C) If a member does not have sufficient learning and skill when the legal service is undertaken, the member may nonetheless perform such services competently by 1) associating with or, where appropriate, professionally consulting another lawyer reasonably believed to be competent, or 2) by acquiring sufficient learning and skill before performance is required.

promised to completely edit and reformulate the Third Amended Complaint into a Fourth Amended Complaint. She did nothing of the kind.

Plaintiff Joseph Cohen was engaged in feverish negotiations to retain Beall, but was led on his own wild goose chase. Plaintiffs Lincoln alleges herein that Beall induced detrimental reliance regarding her services by continually making promises to the Plaintiffs that culminated in gross neglect. Her work (or lack thereof) amounts to legal malpractice and gross negligence.

Plaintiff Renada Nadine March hired an attorney named Dennis Martin Russell, who agreed to represent her in this case. But, after receiving five thousand dollars from Plaintiff March, Attorney Russell inexplicably sat on his hands refusing to appear on her behalf or do any work of any kind in regards to this case.   This left March without any further funds to contribute, where necessary, for example, to completion of service of process in that Russell never refunded March's money despite repeated requests.  (See Exhibit B).

Above cited Plaintiffs relied on their lawyers to serve the Defendants and litigate the remainder of the case all the way up to trial. They relied on the assurances given to them by their perspective attorneys and have been hurt as a result, leaving a variety of pieces out of place. Because of her appearance, Beall's involvement left Lincoln unable to represent himself or operate independently from Beall, thereby reinforcing the neglect, causing a ripple effect throughout the case.

## B. CASE SHOULD NOT BE DISMISSED BECAUSE ISSUES HAVE YET TO BE ADDRESSED IN THIS COURT'S ORDERS

Plaintiffs argue that this Court should not dismiss this case without addressing several issues that have been inexplicably ignored in this Court's previous orders. Progressing from March, June, and July of 2010 through

1

2

3    January, March, and July of 2011: in March, June, & July of 2010, Judge Carter's

4    orders tended to suggest an intention to allow the Plaintiffs' claims to proceed,

5    however quite a few orders seem either inconsistent or unclear.  The following

6    orders have yet to be addressed in any meaningful way in this litigation:

7         On March 16, 2010, the Court struck down Silverstein's State Court

8    eviction order against Renada as illegal, and reversed it.  On June 16, 2010, the

9    Court ruled that it would entertain argument on the question of whether the

10   Civil Rights Removal statute was being applied in a racially biased manner and

11   whether that judicial precedent and doctrine should be set aside or not (but

12   later strongly suggested that Plaintiff Renada Nadine March hire an attorney).

13        On  July  1,  2010,  the  Court  denied  Steven  D.  Silverstein's

14   [12(b)(1)] Motion to Dismiss for want of jurisdiction entirely and denied

15   Silverstein's 12(b)(6) Motion as to dismiss the single critical claim that

16   Silverstein had engaged in Illegal Unlawful Detainer practices, again bordering

17   on the criminal.  (See Exhibits C & D, Declarations of Daniel Christian Mack and

18   Richard Eugene Mendez).

19        Then in January, March, and July of 2011, Judge Carter appeared to

20   reverse himself on this critical issue, and instead of the detailed and careful

21   order he entered on July 1, 2011, he entered summary, "broad stroke" orders

22   on January 27, 2011, and March 15, 2011, and refused to reconsider the January

23   27 order on July 18, 2011---all either without serious discussion or with such

24   flippant attention to the details that the Plaintiffs are left in extreme confusion

25   about what claims might or might not go forward at this moment.

26        Judge Carter's Orders of January 27, 2011, and July 18, 2011, against

27   Plaintiff Renada Nadine March simply do not cover all of her claims or issues.

28    The July 18, 2011, order is particularly confusing because it fails to address the

*PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE*        -5-        *Charles E. Lincoln, Plaintiff, pro se*
*AND REQUEST FOR JUDICIAL NOTICE OF LEGAL*                    *c/o Peyton Yates Freiman*
*MALPRACTICE*                                                 *603 Elmwood Pl., #6, Austin, TX 78705*

KEY issue in March's last motion, which was the construction, application, and significance of her Notice of Rescission pursuant to California Civil Code Section 1691 *et seq.* filed in the Orange County Property Records, described above, and included as an Exhibit to the Third Amended Complaint AND to her last submitted Motion.

Judge Carter's Order against Lincoln's claims entered on March 15, 2011, do not explain even slightly why he changed his mind about the illegality of Silverstein's unlawful detainer actions against Lincoln in Rancho Santa Margarita.

Plaintiffs argue that dismissing this case without addressing the above-cited issues would be a circumvention of their collective rights to due process. Further, all of the unaddressed Orders cited above cannot effectively or properly be appealed one by one should this case be dismissed at this juncture. It would be a grossly unfair to dismiss this case given the lack of completion, and the lack of development of the case at the present time in light of the legal malpractice of which the Plaintiffs are victims. the argument being given here and history of this case.

Finally, Plaintiffs submit that it was wrong, given the logical structure of the Plaintiffs' Complaint, for this Court even to Rule on Steven D. Silverstein's, Ron Elter's, GRE Development's, MERS', or OneWestBank's several Motions to Dismiss, for this Court to grant such motions or enter either the January 27, 2011, or the March 15, 2011, PRIOR TO THE RESOLUTION OF THE PLAINTIFF'S CONSTITUTIONAL CHALLENGES TO THE UNDERLYING STATUTES. Given actual Notice to former Attorney General and current California Governor Edmund G. ("Jerry") Brown by the Plaintiffs' prefiling letter and delivery of their Third Amended Complaint to him, it was and remains possible for this Court to

resolve the Constitutional issues, over which this Court has acknowledged it has plenary jurisdiction, even without an answer or contest from the State of California.

## C. INNER DISSENSION

Plaintiffs Joseph & Ana Cohen, one of three households to have completed, filed, and perfected a Notice of Rescission with the Orange County Recorder of Deeds and Property Clerk, ended up in conflict with non-Plaintiff but closely allied and concerned party Aurora Diaz, who was one of Renada & Dan's closest friends outside the group.

Starting on or about May 2011 Joseph and Ana Cohen stopped cooperating with the rest of the Plaintiffs because of their issues with Aurora Diaz. The Cohens were no longer available by phone, email or present in any meetings between the other Plaintiffs. The Cohens essentially became so disenchanted with this litigation that they went so far as to turn against their landlord and friend Aurora Diaz. The Cohens were tenants in Diaz property after they were evicted from their own property (which is subject of this suit). As tenants, the Cohens worked with the bank against Plaintiff Diaz, handing over her keys for a "cash for keys" deal made behind Diaz' back.

This development made it impossible to continue with the Cohens as originally planned, and further fractured the Plaintiffs as a result. The inability to operate as a unit, combined with the Plaintiffs' personal schedules augmented the difficulties of pursuing this litigation. Plaintiffs Mack, March, Mendez and Lincoln argue that further time is needed to serve the Defendants because they wish to drop the Cohens from the complaint, changing the number of Defendants and the litigation itself.

### D. COLLECTIVE LACK OF FUNDS

Plaintiffs Renada Nadine March, Joseph & Ana Cohen, Dan & Claudia Mack, & Richard Eugene Mendez & Alicia Singh were all evicted and dispossessed within approximately a five month period July 201-November 2010.  Their lives were thrown into chaos and they have had a very tough time getting back on their feet again financially.  None of them have had money to contribute to the case for printing, copying, or service of the Third Amended Complaint on the large number of unserved Defendants.

Further they had no monies for service of the remaining defendants. Process servers regularly charge 75 to 100 per Defendant served plus travel expenses. Plaintiffs collectively barely had enough money left over after being evicted and paying lawyers, to feed themselves, let alone pay for a process server.

### E. THE PUBLIC INTEREST FAVORS THE PLAINTIFFS

A   District   Court's   decision   to dismiss for want of prosecution requires weighing conflicting policies: on the one hand, the court's need to manage its docket, the public interest in expeditious resolution of litigation, and the risk of prejudice to defendants from delay; on the other hand, the policy favoring disposition of cases on their merits. *Citizens Utilities Co. v. AT&T,* 595 F.2d 1171, 1174 (9th Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979).

Plaintiffs argue that this case is important for the public debate raging around the country concerning foreclosures in America. The arguments being presented in this action have not been fairly addressed in ANY MEANINGFUL WAY. Californian homeowners have been treated like squatters in their own homes while being denied significant due process during foreclosure.

*PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE*
*AND REQUEST FOR JUDICIAL NOTICE OF LEGAL*      -8-
*MALPRACTICE*

*Charles E. Lincoln, Plaintiff, pro se*
*c/o Peyton Yates Freiman*
*603 Elmwood Pl., #6, Austin, TX 78705*

1
2
3   Accordingly, large faceless corporations and the backward state laws that
4   support those corporations are silencing homeowners' arguments through a
5   purely administrative process meant to restrict arguments, rendering them
6   futile from the beginning.

7                                   **CONCLUSION**

8        The constitutional claims raised by the Third Amended Complaint in 8-
9   09-cv-01072-DOC-E are matters of extreme importance to the Future of
10  California and, in fact, of private property ownership in America. Plaintiffs
11  respectfully request that they be given another 90-120 days more to drop their
12  attorneys and various Plaintiffs/Defendants, and finally serve the remaining
13  Defendants.

14       Plaintiffs have responded to this Court's very reasonable Order to Show
15  Cause by showing the EXTREMELY UNREASONABLE, UNPROFESSIONAL, and
16  DOWNRIGHT INCOMPETENT and DISHONEST conduct of their attorneys.
17  Charles E. Lincoln was supposed to open a new Law Office for Diane Beall in
18  Orange County. Renada Nadine March paid $5000 for Dennis Martin Russell to
19  appear on her behalf.

20                                          Signed & Respectfully submitted,
21  Thursday, September 29th, 2011
22
23                                          By
24                                          Charles Edward Lincoln, III, *pro se*
25                                          Respectfully signed & submitted,
26  Thursday, September 29th, 2011
27                                          By:
28                                          Renada Nadine March, *pro se*

*PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE*      -9-        *Charles E. Lincoln, Plaintiff, pro se*
*AND REQUEST FOR JUDICIAL NOTICE OF LEGAL*                    *c/o Peyton Yates Freiman*
*MALPRACTICE*                                                *603 Elmwood Pl., #6, Austin, TX 78705*

1

2

3

4

5   Thursday, September 29th, 2011

6

7

8

9

10

11   Thursday, September 29th, 2011

12

13

14

15

16

17   Thursday, September 29th, 2011

18

19

20

21

22

23

24

25

26

27

28

Respectfully signed & submitted,

By: _____
Daniel Christian Mack, *pro se*

Respectfully signed & submitted,

By: _____
Richard Eugene Mendez, *pro se*

By: _____
Alicia Singh, *pro se*

## CERTIFICATE OF SERVICE

Plaintiffs certify that a true and correct copy of this Motion was sent to the following Defendants/Interested Parties by email and the US Postal service:

Diane Beall
Advocate's Law and Real Estate
243 South Escondido Boulevard
Escondido, CA 92025
760−807−9147
Email: attorneydianebeall@gmail.com

Larry Rothman
Larry Rothman &Associates
One City Boulevard West
Suite 850
Orange, CA 92868
714−363−0220
Email: tocollect@aol.com

Joshua Andrew Del Castillo
Allen Matkins Leck Gamble Mallory and Natsis
515 S Figueroa Street 7th Floor
Los Angeles, CA 90071
213−622−5555
Fax: 213−620−8816
Email: jdelcastillo@allenmatkins.com

Thursday, September 29, 2011.

By: _____
Richard Eugene Mendez, *pro se*

*PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE AND REQUEST FOR JUDICIAL NOTICE OF LEGAL MALPRACTICE*        -11-        *Charles E. Lincoln, Plaintiff, pro se*
*c/o Peyton Yates Freiman*
*603 Elmwood Pl., #6, Austin, TX 78705*

1
2
3
4

# Exhibit A:
# Declaration of Charles Lincoln

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Declaration of Charles Edward Lincoln, III

1.      My name is Charles Edward Lincoln.  I was born April 10, 1960.  I received a Ph.D. from Harvard University in 1990 and a J.D. from the University of Chicago in 1992.  I was a judicial extern to the Honorable Stephen Reinhardt of the United States Court of Appeals for the Ninth Circuit, sitting in Los Angeles, during the academic year 1988-1989 and a judicial law clerk to the Honorable Kenneth L. Ryskamp, hired in April 1991 for a term ending in September 1993.

2.      While employed as an associate at the firm of Cadwalader, Wickersham, & Taft I participated in the preparation of the first SEC registration statement for a mortgage backed security obligation in 1993-1994, and have been a student of and critical opponent of securitized mortgage backed derivatives ever since that time.

3.      I am the original Plaintiff in this case as the owner of 4 Via Corbina in Rancho Santa Margarita, Orange County, California, illegally evicted by Silverstein's private henchmen under color of law on or about September 16, 2009, and deprived of substantial movable personal property including books, legal documents, and my United States passport, all after a judicial proceeding in Orange County Superior Court of which I had received no notice.

4.      I attach my U.S. Criminal Complaint as Exhibit (1) to this Declaration, and request that Steven D. Silverstein, Ron Elter, their unnamed employees, and Sandra Hutchens and unknown deputies be prosecuted for violations of 18 U.S.C. §§241, 242, 1341, 1343, 1962(a), 1962(b), 1962(c), and 1962(d).

5.      I have studied California Civil Code 2924-2934 *et seq.* and all related statutes and their construction and application by the California Courts and concluded that these statutes are designed to circumvent and destroy the common law of contractual integrity, especially privity of contract and holder-in-due course doctrines, and that the California non-judicial foreclosure system thereby created is a monstrous

violation of and infringement upon all the rights described by and in 42 U.S.C. §§1981 and 1982.

6.      I have also studied United States Code Title 28, Section 1443 and 1447(d), as well as Title 42 U.S.C. Sections 1981 and 1982, and concluded that the continued judicial application and construction of these statutes along racially discriminatory lines is anathema to the letter and spirit of the Fourteenth Amendment as well as inconsistent with ***Richmond v. Croson, Adarand v. Peña,*** and all other recent Supreme Court opinions and jurisprudence on equal protection.

7.      For all the reasons outlined in Renada Nadine March's Declaration submitted on this same date, September 29, 2011, and for many others, I have consistently sought representation by legal counsel in this case.

8.      As this Court is well aware, I began this case while working as an employee and associate of Dr. Orly Taitz in Rancho Santa Margarita, and Dr. Orly Taitz had originally agreed to represent me in this case and did in fact represent me briefly in related but never concluded state court litigation.

9.      After Dr. Taitz' betrayal and breach of contract and fiduciary duty, I sought to represent myself, always aware that to the degree I assisted my co-Plaintiff Renada or anyone else, some might suspect or accuse me of the unauthorized practice of law.

10.     By and through Renada Nadine March I came to know Attorney Diane Beall. I had always been a great fan of the movement which created the American Independent Party and nominated Alabama Governor George Corley Wallace in 1968, to become the last third party candidate in United States History (and the only such candidate since Strom Thurmond in 1948) to win an appreciable number of states and electoral votes in that election against Richard Milhous Nixon and Hubert Horatio Humphrey.  I believed that Diane Beall and I could work well together.

11.     I attempted to recreate, with Attorney Diane Beall, some elements of the plans I had formulated with Dr. Orly Taitz, except that Diane Beall was, if anything,

even more financially strapped and struggling at the time than I was, so unlike Dr. Taitz, she could offer no financial or logistical support to the project.

12.    Nonetheless, however, Diane Beall told me that she had the ability to get an office opened in Santa Ana at which I could work with and for her as a law clerk to improve our mutual financial and professional status.

13.    This was the heart and substance of my agreement with Diane Beall: she would represent me, then open her office in Santa Ana, Orange County, and I would manage it.  It was a faint echo and a far cry from what I had envisioned and carefully planned with Orly, but it was something.

14.    Furthermore, Diane Beall agreed with my analysis of California Civil Code §2924 et seq., as well as of the need to remove the racial bias both from Civil Rights Removal and from the essential Civil Rights to Contract and Access to Courts to protect interests in property statutes, 42 U.S.C. §§1981-1982.

15.    She claimed that she looked forward to building her political career and standing based on the advocacy of these positions and of her role in changing the mortgage foreclosure crisis in California, of which she herself was also a victim.

16.    Diane Beall loves ballroom dancing and so I met her most often at dancing events in various parts of Southern California.  At one of these meetings in late October 2010, about one month after the filing of our Third Amended Complaint, Diane finally signed all the necessary papers to enter her appearance as my attorney.

17.    Part of our plan was that she would assist me in editing and drafting and reformulating a Fourth Amended Complaint, preferably before Thanksgiving but in any case by early December 2010, and we represented these plans to the Court in the only papers she ever filed.

18.    These events all took place after Dennis Martin Russell had betrayed Renada Nadine March, as described in her declaration, and after Dan Mack was evicted, as described in his, but before Renada herself was evicted.

*Declaration of Charles Edward Lincoln, III*  - 3 -

19.     We all believed that Diane would eventually appear on behalf of all of us, although she had specifically offered and accepted only to appear on behalf of me and offered but not reached a final agreement with Joseph & Ana Cohen, or Dan and Claudia Mack.

20.     From the time that Diane Beall signed on as my attorney, she refused ever to meet and discuss strategy and only demanded that I pay her money, despite the fact we had never agreed on any retainer fee or hourly wage, forgetting completely the plans to open an office together which I would manage in Santa Ana or elsewhere and of my working for her.

21.     Diane Beall never in fact gave me any clients to work with nor any work on client cases.  I travelled back East in November & December where I suffered health (cardiac) problems while in Annapolis, Maryland, visiting my son at St. John's College.  I then spent December 21-February 2, 2010-2011 convalescing in my old family hometown of New Orleans, Louisiana.

22.     Instead, Diane Beall almost immediately went to work for an out-of-state attorney, Paul Nguyen (pronounced "Wen"), who had won a rather strange if pyrrhic victory concerning his home in Los Angeles against JP Morgan Chase in front of Judge Howard Matz, who appeared to have engineered the case as some sort of demonstration from start-to-finish.

23.     Paul Nguyen almost immediately started to pressure Diane Beall not to work with me or any of the Plaintiffs in the present case 8:09-cv-01072-DOC-E.

24.     I met with Paul Nguyen exactly once, in or about early February 2011, and he made it absolutely clear that he did not want to get involved in this case.

25.     Diane meanwhile made it absolutely clear that Paul Nguyen wanted to prevent her from working with me.

26.     Diane and I could not reach any agreement about anything.  Diane knew that I had sued Orly and she was afraid I might sue her.  I asked her to work with us to

*Declaration of Charles Edward Lincoln, III  - 4 -*

save the case.  She absolutely and positively refused to do anything and put all the blame on Paul Nguyen.  She has, of course, always had the option of seeking to withdraw from this case by a unilateral motion, but she wanted me to release her from liability before she would withdraw.

27.    In fact, I  know that Diane had no money, at least until she started working with Paul, but I think that Paul Nguyen was guilty of tortiously interfering with my contract with Diane and he claimed to have made a great deal of money and had a great deal of success in fighting mortgage foreclosures in both California and his home state of New York, so I saw no point in letting Diane off the hook until, now, it has become obvious that she has impeded the progress of this case, never drafting or filing even a single document, for almost one whole entire year.

28.    In my opinion, this Court should issue an Order to Show Cause to Diane Beall and Paul Nguyen why they should not be sanctioned for professional incompetence and gross dereliction of duty and irresponsible behavior of the most extreme kind.

29.    Diane Beall never calls except to ask for money, even though she and I had no written retainer agreement and she has been saying that Paul Nguyen demands that she quit working for me all the time.

30.    Diane Beall has breached her fiduciary duties of professional competence, diligence, loyalty, and communication, all in violation of both the California Rules of Professional Conduct and the California Business & Professions Code.

31.    It was improper for this Court to dismiss my claims against Steven David Silverstein prior to ruling on the Constitutionality of California Civil Code §§2924-2934 *et seq.* as well as the related provisions for judicial eviction, and the provision of California law which discriminate against pro se litigants.

32.    Similarly, the closely related questions of whether Civil Rights Removal to challenge this statute on grounds other than statutory racial bias should be allowed as

*Declaration of Charles Edward Lincoln, III  - 5 -*

a consequence of post-*Richmond v. Croson, Adarand v. Peña* jurisprudence, and whether the racially charged language "same rights as White citizens" should be stricken forever and all purposes from the statutes 42 U.S.C. §§1981, 1982, each take factual, historical, logical and theoretical priority before the decision of the claims against Steven D. Silverstein, Ron Elter, GRE, Meglodon Financial, L.L.C., DNE Associates, and similar entities, all of which are closely related and may be (in effect) mere alter-egos of Steven D. Silverstein.

33.    While it may be a general rule that Constitutional issues should be deferred unless absolutely necessary, in the present case, the Plaintiffs' case cannot be accurately or fairly or even meaningfully resolved in terms of *Rooker-Feldman* or *Younger v. Harris* abstention doctrines when massive questions regarding the systematic statutory deprivations of federally secured rights.

34.    In the present case, the constitutional questions must be decided first, and this Court accordingly should vacate its orders of January 27, 2011 and March 15, 2011.

35.    I finally ask this Court to discharge Diane Beall as my attorney for any and all purposes in this case, but not without binding her over to show cause why her conduct was consistent with her professional and fiduciary responsibilities.

36.    I have suffered from several episodes of ill-health (cardiac problems) all year and the other plaintiffs in this case have suffered from major economic and residential dislocation directly relating to the facts and circumstances giving rise tot this case.

37.    The Court should also summon Joseph & Ana Cohen to Court to determine their status.  They have engaged in an ongoing feud this year with a "co-traveler" of our, namely Aurora Isadora Diaz.

38.    Plaintiff in this case should have at least another 90 days (until December 31, 2011) to effect final service on all parties in accord with the Court's Order of August 30, 2011.

1        I have made this declaration of and from my own personal knowledge,

2    information, and belief under penalty of perjury pursuant to 28 U.S.C. §1746 within

3    the Central District of California, executing the same in the City of Long Beach,

4    California on Thursday, September 29, 2011.

5        Done and Executed:

6

7

8                                    Charles Edward Lincoln, III, Plaintiff

*Declaration of Charles Edward Lincoln, III* - 7 -

# Exhibit (1)
# Criminal Complaint
# Against
# Steven D. Silverstein
# Ron Elter
# GRE Developments
# Sandra Hutchens

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Central District of California   ▾

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Steven David Silverstein, Ron Elter, unnamed Officers & Directors of GRE Development, Sandra Hutchens, Sheriff of Orange County | ) ) ) ) |
| *Defendant(s)* | |

Case No. 8:09-cv-01072-DOC-E

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 30 2009-December 31 2009__ in the county of _____Orange_____ in the ____Central____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 241 | Civil Rights Violations by Sandra Hutchens, Steven David Silverstein, Ron Elter, unnamed Officers & Directors of GRE Development |
| 18 U.S.C. 242 | Conspiracy to Violate Civil Rights between Sandra Hutchens, Sheriff of Orange County, Steven David Silverstein, Ron Elter, unnamed O & D of GRE |
| 18 U.S.C. 1341 | Use of mail (false delivery of service of process to conceal litigation) in August 2009 (Steven D. Silverstein) |
| 18 U.S.C. 1343 | Use of telephones and wires to execute and effect scheme to defraud of interest in real property July 1 2009-December 31 2009 (Steven D. Silverstein) |
| 18 U.S.C. 1962(a)(b)(c)(d) | Racketeer Influenced & Corrupt Organizations Violations among all parties |

This criminal complaint is based on these facts:

I hereby incorporate by reference all of the previous sworn statements I have filed in this case and 08-cv-01334-DOC and all my allegations which I have verified in any and all pleadings and motions, including but not limited to the present declaration.  Orange County Sheriff's deputies routinely have acted in excess of lawful authority as a matter of custom.

☑ Continued on the attached sheet.

*Complainant's signature*

Charles Edward Lincoln III-Natural Born Amer. Citizen
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____          _____
                                                                    *Judge's signature*

City and state: _____          _____
                                                                           *Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B:
# Declaration of
# Renada Nadine March

## Declaration of Renada Nadine March

1.      My name is Renada Nadine March.  I was born November 16, 1960, in Grand Rapids, Michigan, and am a natural person resident in Orange County, California, since about 1982, and at all times relevant to this Complaint.

2.      I make this declaration in respectful response to the Court's Order to Show Cause entered on August 30, 2011.  I oppose the dismissal of this case because none of the Court's orders have addressed any of my claims whatsoever.

3.      I am a Plaintiff in the present action 09-cv-01072-DOC, because in or about January of 1995, I purchased my home at 7 Bluebird Lane in Aliso Viejo, Orange County, California 92656.

4.      I applied for purchase money credit and maintained a mortgage in the amount of $167,000.00, which was the purchase price, which I refinanced twice (last time with Ocwen and GMAC, which then transferred and carried or claimed in the name of Indymac which was taken over by OneWestBank in or about 2008.

5.      I attached a complete, true and complete and fully executed copy of my Notice of Rescission pursuant to California Civil Code §§1691-1695 as Exhibit A to the Third Amended Complaint which we filed in this case on September 22, 2010, and I cite, reallege, and incorporate the full text of that exhibit with all attachments, including the deeds, and the complete forensic audit by Charles J. Koppa completed July 18, 2010, as if the same were fully copied and restated in this Declaration in Response to the Court's August 30, 2011 Order to Show Cause to avoid repetition of many historical facts here.  The copy filed with the Court on September 22, 2010, was not a certified copy from the Orange County Recorder's Office, but is in exactly the same form as was accepted and approved by the attorneys for the Orange County Recorder's Office.

6.      I object to the dismissal of this case also because I notice that this Court did not evaluate or Rule on my Notice of Rescission, and I expect and respectfully

*Declaration of Renada Nadine March* - 1 -

request that this Court should decide and adjudge, issue a ruling and decree, concerning the validity of my Notice of Rescission and how it effects the relationship between the parties and the validity of the alleged transfer of title in the October 30, 2009, trustee's sale to Meglodon Financial L.L.C. (Meglodon appears to be a mis-spelled reference to "Megalodon", the largest shark in recorded fossil history, and a reference to Steven David Silverstein's favorite insignia).

7.     This Court is quite familiar with my efforts to stave off eviction in the aftermath of this alleged October 30, 2009 "sale", in which I joined with Plaintiff Charles E. Lincoln in filing suit against Silverstein in this Court, then filed a series of several bankruptcies and removals pursuant to the civil rights provisions of 28 U.S.C. §1443(1), a racially neutral, color-blind statute which has been improperly, illogically, and I think utterly immorally construed by the Courts as available only to African-American victims of expressly racist statutory discrimination.

8.     None of my civil rights removals pursuant to 28 U.S.C. §1443(1) ever "stuck" long enough to resolve the key issue I sought to bring to this Court's attention: that California Civil Code §§2924 *et seq.* is a vast statutory scheme in the state of California designed to infringe upon and in fact to extinguish all the common law rights to make and enforce contracts and to have access to the courts and give evidence in support of such contracts, especially for the acquisition of interests in property, which rights are the same as those guaranteed by 42 U.S.C. §§1981, 1982.

9.     On or about June 4, 2010, this Court, during one of my removals (8:10-cv-00516-DOC-E), entered an order that the Court would hear argument concerning the reasons why race should not be applied in the construction of civil rights removal and stricken from the civil rights contract, property, and access to courts statutes cited above. (See Exhibit (1) to this Declaration: Document 16 Filed 06/04/10).

10.    In a later order this Court strongly suggested that no further removals would be tolerated unless filed by a licensed attorney.

*Declaration of Renada Nadine March* - 2 -

11.     Steven D. Silverstein and his attorney Larry Rothman had raised the question of whether either Charles Edward Lincoln, III, or I were engaged in the unauthorized practice of law.

12.     Our former co-Plaintiff, Christyna Lynn Gray, who disappeared mysteriously at about the end of December 2009, apparently filed an affidavit with this Court (which was never served on us, but which we discovered through PACER) in which she falsely stated that Charles Lincoln had led her to believe that he was a licensed attorney.   I was with Charles when he first met Christyna and her (activist) mother and Charles not only said no such thing, but was aware that Christyna was employed by the Department of Homeland Security and told her "you could get in trouble for hanging out with characters like me."

13.     A friend of mine, Aurora I. Diaz, was warned sometime during the Spring of 2010, I believe in March, in Commissioner Glen Mondo's Court in Westminster, that I was engaged in the unauthorized practice of law and that she should not be associating herself with me; he was trying to intimidate her.

14.     Another friend, Richard E. Mendez, has also been threatened repeatedly with charges of unauthorized practice of law for helping people in eviction situations in Orange County.

15.     For all these reasons, in the midst of what seems to be a nationwide, and certainly a local Southern California, catastrophe brought on by unfair, oppressive, and illegal mortgage foreclosure and eviction practices, apparently with the support at least of the State government, and perhaps of some Federal agencies and programs as well, we felt "besieged" in the middle of a very hostile environment, and believed that to retain an attorney would be in our best interests, and such discretion might constitute the better part of valor.

16.     During the Spring of 2010, Charles spent a great deal of time in Florida but I was here, and I met Diane Beall, an attorney and Candidate for California Attorney

*Declaration of Renada Nadine March* - 3 -